THE MURRAY COMPANY *v.* SATTERFIELD.

Opinion delivered July 3, 1916.

1. MORTGAGES—TWO MORTGAGES—RECORD—PRIORITY.—Where two mortgages are given covering the same property, in the absence of countervailing equities, the one first filed for record is a superior lien to the other, regardless of which mortgage was first executed.

2. MORTGAGES—MORTGAGE BY VENDOR—TIME FOR FILING.—The above rule is qualified as to allow a vendor who executes a deed and simultaneously takes a mortgage, a reasonable time in which to file his

mortgage for record, but where the said vendor delays an unreasonable time in filing his mortgage, he will lose his priority in favor of a mortgagee who files a mortgage upon the same property in the meantime.

3.   MORTGAGES—AFTER ACQUIRED—CHATTELS.—A mortgage specified that it should cover "also all machinery that may hereafter be added to said premises." *Held*, the mortgage lien was valid in favor of the mortgagee as against the vendor of the machinery who took a mortgage upon the same when he sold it to the mortgagor, but who delayed an unreasonable time in filing his mortgage.

Appeal from Yell Chancery Court, Danville District, *Jordan Sellers*, Chancellor, affirmed.

### STATEMENT BY THE COURT.

This suit was instituted by Satterfield against one V. E. Dacus, Claud Fulton and Lillie Fulton to recover judgment and to foreclose a mortgage which the latter had executed to Satterfield to secure a promissory note for borrowed money in the sum of $1,800. The note and mortgage were executed February 11, 1913. The mortgage embraced certain lands in Yell County and certain machinery, and also "4-70 saw all steel Murray gin stand, lint flue condensers and one double box Munger Press"; also, "all machinery that may hereafter be added to said premises." The mortgage was duly recorded on the 20th of February, 1913.

The appellant intervened and set up that Dacus and Fulton were indebted to it in the sum of $1,461, evidenced by their promissory notes, secured by mortgages, made Exhibits B1, B2-B3. The mortgage Exhibit B2 was dated March 6, 1913, and was made to secure a note of that date for $474.55. Embraced in the mortgage was certain machinery described as follows: "4-70 saw Murray plain single steel gin; 4-70 saw steel feeder; 1 Murray 4-70 saw steel lint flue complete; 4-70 saw steel elevator," etc., "said machinery located at Danville, Arkansas, and to be located in Yell County, State of Arkansas." And the mortgage contained a clause which specified that the machinery "is clear of liens, conveyances and encumbrances, and is to remain personalty, however, and wheresoever located." The mortgage was duly recorded on

May 9, 1913. Mortgage Exhibit B1 was executed August 11, 1914, recorded September 12, 1914. Mortgage Exhibit B3 was executed 30th October, recorded 3d December, 1914.

Satterfield answered the intervention, setting up that his mortgage was prior to that of the Murray Company; and alleging that he had furnished the money to Dacus & Fulton to purchase the gin stands claimed by the intervener and on which Dacus & Fulton had given him a mortgage which was to be a first lien on the mill plant, including the gin stands claimed by the Murray Company, and that he had no knowledge that the Murray Company claimed the gin stands at the time he advanced the money to Dacus & Fulton and they executed their mortgage to him on same; that the Murray Company was notified by Dacus & Fulton that the purchase money for the gins was borrowed of him and that he was to have a first lien on same. He also set up that the Murray Company was a foreign corporation and that it had failed to comply with the laws of Arkansas regarding such corporations.

Dacus testified on behalf of the appellees that at the time he executed the mortgage to Satterfield he had a contract with the Murray Company for the purchase of gin stands; that at the time he made the first contract in January he told the Murray Company that he was borrowing the money from a farmer in Arkansas to pay for the gin stands and that he was to give him a mortgage on all the stuff that he was buying, as well as what was already on the land; that at that time he contracted for three gin stands, and later changed the contract by buying another gin stand, and a new contract was drawn up at the time they got the four gin stands. When witness got the money from Satterfield witness told him that he wanted enough money to pay for everything so that he would owe it all to one man.

On cross-examination he testified that the contract he referred to as the first contract, made in January at Dallas, Texas, was abandoned and never carried out; that the contract under which the shipments were made and the machinery delivered was afterwards made at Darda-

nelle, Arkansas. Witness made the mortgage to Satterfield a few days after they had contracted for the stuff. On arrival of the machinery they made a mortgage to the Murray Company before it would deliver the same. Witness made the purchase under a contract that the title to the machinery was to remain in the Murray Company until the purchase money was paid and secured by a mortgage. This they had to do before they could get the machinery.

Satterfield testified that he loaned the money to Dacus & Fulton which the mortgage in suit was given to secure; that at the time the note and mortgage were executed he had no knowledge of anyone else having a claim or lien against the gin stands. He understood he was paying for them from the factory. Dacus & Fulton represented to witness that the machinery would be free of liens, otherwise he would not have loaned them the money. Witness did not know that the Murray Company had a lien or claim on the property until they filed their intervention. Dacus & Fulton told witness that the money they were borrowing from him would pay for all the machinery and give them a clear title. Witness then testifies that the gin stands and all the machinery incident thereto and connected therewith and necessary for their operation were intended to be permanent when put upon the plant; that the machinery of the plant was attached to the plant by concrete foundation and its removal would damage the remaining property.

The testimony on behalf of the appellant, which is not disputed, tended to prove that the machinery in controversy embraced in the mortgages was sold to Dacus & Fulton under a regular contract which provided that the title to the property was to remain in the vendor until paid for in full or until notes and mortgages for the purchase money were executed and a cash payment made. The contract also provided that until this was done the property was to remain personal property and was not to become a part of the realty.

The court found that Satterfield had a valid first lien on the property described in Exhibit B2; and also found

that the appellant had a valid first lien on the property described in Exhibits B1 and B3, and entered a decree accordingly for the respective parties. Appellant duly prosecuted this appeal, and the appellee has taken a cross-appeal in this court.

*Harry H. Myers*, for appellant.

1. When Dacus & Fulton executed the mortgage to Satterfield they had no title to the machinery, as the title was reserved in appellant. The machinery was so sold that it could not become a part of the realty until paid for and the prior mortgagee never obtained any lien prior to its reserved title and mortgage lien; the prior mortgage parted with nothing of value as regards the chattels and the lien of the interpleader was prior and paramount. The prior mortgagee had notice. 19 Cyc. 1950-1; 66 Ark. 87; 56 *Id.* 55. The machinery never became a *fixture* and never passed to Satterfield. Ewal on Fixtures, p. 22; 43 Vt. 546; 61 *Id.* 213; 73 Ark. 227; 95 *Id.* 275; 65 *Id.* 23; 63 *Id.* 628; 13 A. & E. Enc. Law (2 ed.) 642; 19 Cyc. 1065; 16 Wash. 95; 44 N. J. Eq. 244; 6 Am. St. 889; 36 S. W. 1010; 45 W. Va. 584; 57 Neb. 323; 57 Cal. 3; 121 Ala. 335; 53 N. Y. 377; 16 Ark. 511; 195 Am. St. 640 and many others. See also 42 Ark. 473; 101 Ark. 473.

2. As between conflicting mortgages the one first recorded will have priority. But the mortgagors had no title to the machinery. 52 Ark. 439. Nor did they ever acquire any title to same. 32 Ark. 260; 97 *Id.* 432; 113 *Id.* 575; 50 *Id.* 108.

3. Where one of two innocent persons must suffer he through whose agency the loss occurred must sustain the loss. 19 Cyc. 583; 108 Ind. 419; 58 Am. Rep. 49; 9 N. E. 329.

*John M. Parker*, for appellee.

1. A mortgage of future acquired property is valid. 27 Cyc. 1040; 108 Ark. 442; 107 *Id.* 337. Upon the execution of the mortgage the title vested in Dacus & Fulton, and by recording the mortgage Satterfield obtained a prior

lien.    Kirby's Digest. § 5396; 71 Ark. 517; 97 *Id.* 432; 37 *Id.* 94.; 27 Cyc. 1162; 57 Iowa 115; Kirby's Dig., § 734; 47 Ark. 111; 27 Cyc. 1194.

. 2.    The appellant did not file its mortgage within a reasonable time.    97 Ark. 437.

3.    The machinery became a fixture.    93 Ark. 77; 56 *Id.* 5; 66 *Id.* 87.

Wood, J. (after stating the facts).    At the time Dacus & Fulton executed the mortgage to Satterfield on the machinery in controversy they had no title to such machinery, for the undisputed evidence shows that they purchased under a written contract in which the title to the machinery was to remain in the Murray Company until notes for the purchase money and a mortgage to secure the same were executed and a cash payment made.    The mortgage to Satterfield was dated February 11, 1913, and the mortgage (Exhibit B2) to the Murray Company and part payment of the purchase money was of date March 6, 1913.    Dacus & Fulton acquired no absolute title to the property until the latter date.    At that date however, by complying with the condition of the contract of sale in executing the notes and mortgages and paying part of the purchase money, they did acquire title to the machinery.    *Andrews* v. *Cox*, 42 Ark. 473; *Butler* v. *Adler-Goldman Com. Co.*, 62 Ark. 450; *Starnes* v. *Boyd*, 101 Ark. 469.

In the mortgage to appellee the property in controversy on which the court granted appellee a first lien was definitely described, and was also included under the words "all machinery that may hereafter be added to said premises."    It is a well settled rule that "a mortgage may be made to cover future acquired property of a mortgagor when an intention to that effect clearly appears from the the face of the instrument and it will be enforced against the mortgagor and all others except purchasers for value without notice."    27 Cyc. 1040.    *Kline* v. *Ragland*, 47 Ark. 111; *Williams* v. *Cunningham*, 52 Ark. 439; *Morton* v. *Williamson*, 72 Ark. 390.

Therefore, when Dacus & Fulton acquired title to the property in controversy that title inured to the benefit of Satterfield under his mortgage. But the mortgage to the Murray Company was simultaneous with the vesting of the title to the machinery in Dacus & Fulton.

In *Western Tie & Timber Co.* v. *Campbell*, 113 Ark. 570, we held (quoting syllabus): "A purchase money mortgage must be given simultaneously with the execution of the deed of conveyance in order to take precedence over prior liens, for if there is any intervening space of time during which the title rests in the purchaser the prior liens attach to it in preference to the mortgage."

There was no intervening space of time here in which the title to the property rested in Dacus & Fulton before they conveyed the same, under their mortgage, to the Murray Company, but the latter company allowed the title to rest in Dacus & Fulton for over two months before recording its mortgage. The case we have, therefore, under the facts, is that of two independent mortgages on the same property, given to different mortgagees. While both the mortgages were good as between the parties, neither of the mortgagees acquired a lien as against third parties until the mortgages were filed for record. Kirby's Digest, § 5396.

(1–2.) In the absence of countervailing equities, the rule as to priority as between two independent mortgages on the same property, given to different mortgagees, is that the one first filed for record is a superior lien to the other, whether it was executed before or after such other. See 27 Cyc. 1192-94. But this rule is so qualified as to allow a vendor who executes a deed and simultaneously takes a mortgage, a reasonable time in which to file his mortgage for record. See *Beers* v. *Hawley*, 2 Conn. 467.

Under the peculiar facts of this record the issue as to the priority of these mortgages should be determined by the diligence displayed by appellant to comply with the statute in order to give third parties notice of the existence of its mortgages. Satterfield filed his mortgage for record nine days after it was executed, whereas the Murray Company waited from one to two months before

recording its mortgages. Therefore, if the mortgages were treated as having been made to the respective mortgagees on the same day, it is undoubtedly true that Satterfield appears to have exercised the greater diligence in complying with the statute in perfecting his lien and giving notice to others of the existence thereof, and his mortgage should be treated as prior in time to the mortgages of appellant.

No special circumstances are shown on the part of the appellant to excuse or justify it in waiting for so long a time to have its mortgages recorded. It allowed the title to remain in the mortgagor for an unreasonable length of time before perfecting its lien by having its mortgages recorded. In the meantime Satterfield had placed his mortgage upon record and should be entitled to priority of lien. In *Thornton* v. *Findley*, 97 Ark. 432-437, we used this language: "For, if the title rests even for a short time in the vendee, with no valid lien thereon in favor of the vendor, then the prior lien secured by another on such property will have precedence over a mortgage subsequently secured by the vendor." That is the principle that controls here and determines the issue in favor of the appellee Satterfield, for as we have already observed the Murray Company allowed the title to rest in the vendee Dacus & Fulton an unreasonable time before recording its mortgage.

(3.) While the property on which the court decreed a first lien in favor of the appellant was not in existence at the time the mortgage to the appellee was executed, yet this property was added to the premises of the mortgagors, and a lien was thereby created in equity in favor of the appellee under that clause of his mortgage which specifies "also all machinery that may hereafter be added to said premises." The lien was good and enforcible as between the parties to the mortgage. *Apperson* v. *Moore*, 30 Ark. 56; *Jarratt* v. *McDaniel*, 32 Ark. 598; *Delta Cotton Co.* v. *Ark. Cotton Oil Co.*, 80 Ark. 431; *Howell* v. *Walker*, 111 Ark. 362, 372.

When appellee's mortgage was placed on record this gave notice to the world of all of his rights, legal and equit-

able, under the mortgage. His mortgage created an equitable lien on the property when it was attached to the premises and as it was placed on record before appellant gave notice or had its mortgage recorded, it follows from what we have already said that appellee acquired a superior lien to appellant in the property described in the decree as lot 3, to wit: One Murray Cleaner complete, with transient and pulley; four seventy-saw huller gin breasts complete; one hydraulic ram complete; one Brunham hydraulic pump; one set hydraulic pump fittings.

The decree therefore in favor of the appellee on the appeal of the Murray Company is affirmed, while the decree in favor of the Murray Company against the appellee is reversed on appellee's cross appeal, and the cause is remanded with directions to enter a decree in favor of the appellee giving him a superior lien to the appellant on the property mentioned in the decree as property known as lot 3, as above described, and for further proceedings not inconsistent with this opinion.