UNITED STATES of America, Plaintiff,

v.

W. H. BARTHOLOMEW and Argile Bartholomew, Defendants.

Civ. A. No. 1243.

United States District Court
W. D. Arkansas, Fort Smith Division.

Jan. 31, 1956.

Charles W. Atkinson, U. S. Atty., Robert Johnson, Asst. U. S. Atty., Ft. Smith, Ark., for plaintiff.

Rex W. Perkins, Fayetteville, Ark., for defendant.

JOHN E. MILLER, District Judge.

On October 18, 1955, plaintiff filed its complaint against the defendants seeking judgment in the sum of $395.60.

In the complaint it is alleged that one Grover Jernigan borrowed from the United States, through the Administrator of the Farmers Home Administration, the sum of $5,455; that to evidence said loan the said Jernigan on August 28, 1952, executed and delivered a promissory note payable to the plaintiff for the sum so borrowed with interest at the rate of 5 percent per annum until paid; that said note was payable in installments, the last installment being due October 1, 1958, and the note further provided that upon default of payment of any installment, the entire indebtedness might be declared due and payable; that to secure the payment of said note the said Jernigan on January 22, 1953, executed, acknowledged, and delivered to the plaintiff a crop and chattel mortgage "on said cattle and implements therein described", said crop and chattel mortgage being filed for record the same day at 4:00 p. m., in Benton County, Arkansas, and being abstracted in Chattel Mortgage Record 39 at page 107 of said records.

There remains due on said note the principal sum of $4,653.12, and none of the chattels described in the mortgage remain in the hands of the said Jernigan. Paragraph numbered 5 of the complaint is as follows:

"On August 11, 1953, said Grover Jernigan without the knowledge and consent of plaintiff sold 14 animals, which were covered by the chattel mortgage heretofore described, for a net value of $395.60, which was a fair market value for said animals at that time, through the defendants doing business as Benton County Sales Company, and no part of said proceeds were applied on the note and chattel mortgage, the defendants thereby depriving the plaintiff of its security."

Summons was served on the defendants on November 11, 1955. In due time and on November 25, 1955, the defendants filed their answer, in which they admitted that they were citizens of Arkansas and residents of Washington County in said state, and that they were partners doing business as the Benton County Sales Company.

The defendants neither admitted nor denied paragraphs 2, 3, and 4 of the plaintiff's complaint, but alleged that they did not have sufficient information on which to base an allegation. The exact words employed by defendants are as follows:

"2. Defendants neither admit nor deny paragraph 2 of said com-

plaint because they do not have sufficient information on which to base the allegation.

"3. Defendants neither admit nor deny paragraph 3 of said complaint for the reason given in paragraph 2 of this answer.

"4. Defendants neither admit nor deny paragraph 4 of said complaint for the reason given in paragraph 2 of this answer."

Defendants denied each and every allegation contained in paragraph 5 of the complaint.

On December 28, 1955, the plaintiff propounded an interrogatory to the defendant, W. H. Bartholomew, in the following words and figures:

"1. Did the Benton County Sales Company keep a daily sales record on August 11, 1953? If so, attach a copy of the sales record for that date as pertains to Grover Jernigan, Route 1, Gentry, Arkansas."

There was no formal reply to the interrogatory but the attorney for the defendants delivered to the attorneys for plaintiff a copy of the sales record requested by plaintiff, which document was introduced in evidence by plaintiff and will be more fully referred to in the findings of fact.

Upon the issue joined the cause proceed to trial to the court on January 17, 1956, and at the conclusion of the introduction of evidence on the part of the plaintiff, the defendants moved for a dismissal on the ground that, upon the facts and the law, the plaintiff had shown no right to relief.

The motion was orally argued by the attorneys, and the Court stated that consideration would be given the motion at the conclusion of all of the evidence, whereupon the attorney for the defendants stated that defendants desired to stand on their motion. Thereupon the case was taken under consideration, and the Court, having considered the argument of the attorneys for the respective parties, together with the pleadings and documentary evidence introduced by plaintiff, now makes and files herein its findings of fact and conclusions of law, separately stated.

## Findings of Fact

### No. 1

The plaintiff is the United States of America, and the defendants are citizens of Arkansas and reside in Washington County in said state.

### No. 2

On August 28, 1952, one Grover Jernigan executed and delivered his promissory note for the principal sum of $5,-455, payable to the order of the United States of America, acting through the Administrator of the Farmers Home Administration at the office of that Administration in Bentonville, Arkansas.

The note was payable in installments, the last of which would become due October 1, 1958.

Upon default in the payment of any installment of principal or interest, or upon breach by the maker of any of the provisions contained in the instrument securing the note, the holder at its option might declare the entire indebtedness to be due and payable.

The note shows the address of the maker as Route 1, Gentry, Arkansas (plaintiff's Exhibit 3).

### No. 3

On January 22, 1953, Grover Jernigan of Route 1, Gentry, Arkansas, executed, acknowledged and delivered a crop and chattel mortgage to the plaintiff, acting through the Administrator of the Farmers Home Administration, to secure the payment of the promissory note described in Finding of Fact No. 2.

The mortgage provides:

"The Mortgagor does hereby grant, bargain, sell, and convey unto the Mortgagee, the following crops or chattels all of which are located or to be located on the premises known as the Jernigan farm or ranch, located and situated approximately 1 mile in a Easterly direc-

tion from the town or city of Y City in the county of Benton, and State of Arkansas."

Then follows a listing and description of 16 cows, 1 bull calf, 3 heifer calves, and 65 ewes. The weights of the cows ranged from 600 to 1,100 pounds.

Immediately following the specific description of the livestock, the mortgage provides:

"including all increase in, accretions to, replacements of, and additions to such livestock; all wool and mohair now on or that may hereafter grow upon or be sheared from sheep or goats mortgaged hereunder; * * *."

Paragraph (3) of the mortgage granting clause, Section II, contains a description of certain farm machinery which is not involved herein. Paragraph (4) of Section II provides:

"All livestock * * * now owned or which may hereafter be acquired by the Mortgagor during the time this mortgage is effective." (Plaintiff's Exhibit 1.)

### No. 4

The balance due on the note is $4,653.-12 principal, and interest in the sum of $199.59 to June 29, 1954. (Plaintiff's Exhibit 2.)

### No. 5

The copy of the sales record furnished to plaintiff by defendants in response to the interrogatory referred to in the statement of the case is as follows:

Sales Record
Benton County Sales Co.

Consigned by
Grover Jernigan
Rt 1, Gentry, Ark.

Highway 71, South

Rogers, Ark.
8–11, 1953

| Tag No. | Cattle | Sold To | Weight | Price | Extension | Commis. | Yardage | Net Amount |
|---|---|---|---|---|---|---|---|---|
| 579 | 1 J. Cf. | Art Jordan | 220 | 11.50 | 25.30 | | | |
| 580 | 1 Red Cf. | #5 | 225 | 13.00 | 29.25 | | | |
| 581 | 1 Rn | Art Jordan | 150 | 13.00 | 19.50 | | | |
| 582 | 1 Wf Cf. | #5 | 295 | 14.00 | 41.30 | | | |
| 583 | 1 " " | #4 | 345 | 9.10 | 31.40 | | | |
| 584 | 1 " " | S. | 345 | 10.50 | 36.23 | | | |
| 585 | 1 Jer " | S. | 330 | 7.00 | 23.10 | | | |
| 586 | 1 Spt " | Frank Neil | 395 | 8.80 | 34.76 | | | |
| 587 | 1 Spt " | Art Jordan | | | 13.00 | | | |
| 588 | 1 Rd " | #4 | 440 | 8.60 | 37.84 | | | |
| 589 | 1 " " | S | 355 | 10.00 | 35.50 | | | |
| 590 | 1 " " | Slim Keck | 270 | 10.25 | 27.68 | | | |
| 591 | 1 Rn " | Art | 240 | 17.75 | 42.60 | | | |
| 592 | 1 " " | Bartell | 205 | 11.75 | 24.09 | | | |
| | | | | | 421.55 | 12.65 | 3.30 | 405.60 |

Less Haul to Clyde Ford 10.00

395.60

Paid by Check No. ——— Date ——— Total

(Plaintiff's Exhibit 4)

## Discussion

As heretofore stated, the case was tried to the Court without a jury on January 17, 1956, and at the conclusion of the trial the Court took the case under advisement. On January 18, 1956, plaintiff filed a motion for summary judgment on the ground that there existed no material issue of fact. Rule 56(c), F.R.C.P., 28 U.S.C.A., provides that a motion for summary judgment shall be served at least ten days before the time fixed for the hearing. Thus, it is apparent that plaintiff's motion for summary judgment was not timely filed. However, plaintiff's brief in support of the motion for summary judgment will be considered by the Court in determining whether plaintiff is entitled to a judgment herein.

The plaintiff apparently contends that the answer of the defendants is insufficient to raise a genuine issue of fact. But, Rule 8(b), F.R.C.P., beginning with the second sentence thereof provides:

"If he is without knowledge or information sufficient to form a belief as to the truth of an averment, he shall so state and this has the effect of a denial. Denials shall fairly meet the substance of the averments denied. When a pleader intends in good faith to deny only a part or a qualification of an averment, he shall specify so much of it as is true and material and shall deny only the remainder. Unless the pleader intends in good faith to controvert all the averments of the preceding pleading, he may make his denials as specific denials of designated averments or paragraphs, or he may generally deny all the averments except such designated averments or paragraphs as he expressly admits; but, when he does so intend to controvert all its averments, including averments of the grounds upon which the court's jurisdiction depends, he may do so by general denial subject to the obligations set forth in Rule 11."

■ There is no reason to believe that the answer of the defendants was not filed in good faith, and the form of the answer sufficiently constitutes a denial of paragraphs numbered 2 and 4 of the complaint. The answer to paragraph numbered 3 of the complaint is not sufficient to constitute a denial because information as to the allegations in that particular numbered paragraph was reflected by public record, and the defendants could have obtained definite information as to the truth of the allegations in that paragraph.

■ Paragraph numbered 5 of the complaint is specifically denied in the answer and raises the chief or primary issue in the case. The answer sufficiently casts the burden upon the plaintiff to establish the material allegations in the complaint and to establish its claim for judgment against defendants. See, 2 Moore's Federal Practice, 2d Ed., Sec. 8.22, page 1676.

Rule 41(b), supra, beginning with the second sentence provides:

"After the plaintiff has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. In an action tried by the court without a jury the court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). * * * "

As heretofore stated, the Court suggested to the attorney for the defendants that the motion to dismiss the complaint of the plaintiff on the ground that under the facts and the law the plaintiff had not shown a right to the relief asked would be determined at the conclusion of all the evidence. It was then that the attorney for the defendants stated that he desired to stand upon the motion, and announced that he did not care to offer

any testimony on behalf of the defendants. The Court then stated to the attorney for plaintiff that if he desired to reopen the case and offer additional evidence that he would be allowed to do so, whereupon the said attorney stated that the plaintiff did not desire to offer any additional evidence.

■ Prior to the adoption of the 1946 amendment to Rule 41(b), there was a division between the courts as to the type of consideration that should be given by the court in determining such a motion. In 5 Moore's Federal Practice, 2d Ed., pages 1044–1046, the author notes that the Third and Fourth Circuits had held that the function of the court was the same as when it had under consideration a motion by a defendant for a directed verdict in a jury case, and that the court was obliged to deny a motion to dismiss at the close of plaintiff's evidence if the evidence would be, in a jury case, sufficient to carry the case to the jury, even though the evidence was conflicting or involved questions of credibility and the court as trier of the facts would find against the plaintiff on the evidence. The Sixth, Seventh, and Ninth Circuits, on the other hand, had held that the question was not whether the evidence would have been sufficient to carry the case to the jury, if there had been a jury, but that the court itself, being the trier of the facts, had a right to apply its own judgment to the plaintiff's evidence, and even though there were some conflicts in the plaintiff's case, or even if there were two possible inferences to be drawn from the plaintiff's case, the court as trier of the facts might apply its own judgment and grant or deny the motion accordingly.

The 1946 amendment adopted the position taken by the Sixth, Seventh, and Ninth Circuits, and the Court now has the power to finally dispose of the case in its present posture, and it is the Court's duty to do so.

In United States v. Borden Co., D.C. N.D.Ill., E.D., 111 F.Supp. 562, 566, the plaintiff contended that the court in disposing of a similar motion was precluded from weighing the evidence. The court in considering the question quoted from Allred v. Sasser, 7 Cir., 170 F.2d 233, 235, as follows:

"' * * * the trial court was the trier of the facts, and in considering the evidence was not bound to view it in a light most favorable to the plaintiff, with all attendant favorable presumptions, but was bound to take an unbiased view of all the evidence, direct and circumstantial, and accord it such weight as he believed it entitled to receive.'"

The court stated its conclusion on the question on page 566 of 111 F.Supp., as follows:

"This court is, therefore, under an affirmative duty to review all the evidence thus far presented, and, upon the basis of that review, to determine whether or not the government's evidence warrants the relief sought in the complaint."

On appeal the opinion was modified on other grounds, 1954, 347 U.S. 514, 74 S. Ct. 703, 98 L.Ed. 903.

See also, Henry v. Moore-McCormack Lines, Inc., D.C.N.Y., 134 F.Supp. 71; Brahms v. Moore-McCormack Lines, Inc., 133 F.Supp. 283.

Therefore, the question before the Court is whether the plaintiff has established its right of recovery against the defendant.

The facts as found by the Court and as set forth in Finding of Fact Number 5 conclusively establish that the cattle sold by defendants at their sales barn on August 11, 1953, were not specifically described in the mortgage. However, it is possible that a few of the 14 head of calves that were sold may have been calves of cows described and covered by the mortgage. If so, such calves would have been included in the mortgage by reason of the provision of the mortgage as found by the Court and as set forth in Finding of Fact numbered 3. In Howell v. Walker, 111 Ark. 362, on page 371, 164 S.W. 746, on page 749, the court said:

"The common-law rule was that the owner of the dam became the owner of the offspring [before birth and after], and therefore a mortgage on the dam carried with it a lien on the after-born offspring or increase. The common-law rule was, however, changed by statute of this state enacted by the Legislature of 1891 (Kirby's Digest, § 5397) [now Sec. 51–1003, Ark.Stats.], which reads as follows: 'The lien of a mortgage or other incumbrance shall not extend to, nor cover the increase or offspring of an animal that is subject to such lien.'

"The manifest intention of the lawmakers was merely to change the common-law rule, and not to prohibit the creation of a mortgage lien upon that kind of property not in being at the time of the execution of the mortgage. The language clearly indicates that the lien referred to was that which, by the terms of the mortgage, included the dam, and it was only intended to prevent that lien from extending to the offspring or increase, and not to prohibit the giving of a mortgage which did include the offspring. If a different meaning had been intended, more appropriate language would have been used.

"Since the passage of that statute a mortgage executed upon property not in esse is not enforceable at law; but a mortgage on after-acquired property or property which subsequently is to come into being is good in equity. When the property comes into being, the mortgage lien attaches to it in equity, and is good against the mortgagor and subsequent holders with notice. Apperson v. Moore, 30 Ark. 56; Jarratt v. McDaniel, 32 Ark. 598, 601."

If the calves that were sold were not the increase of the cows described in the mortgage and covered by it, it is also possible that they may have been "accretions" or "acquired by the mortgagor during the time this mortgage is effective". In 10 Am.Jur., Sec. 137, Chattel Mortgages, the applicable rule is stated as follows:

"When after-acquired property may be mortgaged, the intention of the mortgagor to cover such property must be clearly expressed. As a general rule the lien created by a mortgage does not include other property of the same character which the mortgagor may have afterward acquired and placed with the mortgaged property, or property substituted for that mortgaged, in the absence of any express agreement on the subject."

In Murray Co. v. Satterfield, 125 Ark. 85, at page 90, 187 S.W. 927, at page 929, the court said:

"It is a well-settled rule that: 'A mortgage may be made to cover future acquired property of a mortgagor when an intention to that effect clearly appears from the face of the instrument, and it will be enforced against the mortgagor and all others except purchasers for value without notice.' 27 Cyc. 1040. Kline v. Ragland, 47 Ark. 111, 14 S. W. 474; Williams v. Cunningham, 52 Ark. 439, 12 S.W. 1072; Morton v. Williamson, 72 Ark. 390, 81 S.W. 235."

See also, Guaranty Trust Co. of New York v. Minneapolis & St. L. R. Co., 8 Cir., 36 F.2d 747–751; Stockyards Loan Co. v. Nichols, 8 Cir., 243 F. 511, 1 A.L. R. 547.

■ The defendants make no contention that the mortgage was not properly executed and filed for record. Since the mortgage was properly executed and filed for record, it created a lien upon the property covered therein against third persons from the date of filing for record. Section 51–1002, Ark.Stats.

In Merchants' & Planters' Bank v. Meyer, 56 Ark. 499, at page 506, 20 S. W. 406, at page 407, the court said:

"An absolute sale of property mortgaged by a valid deed, which has been duly acknowledged and filed

for record, made by any one acting as agent of the mortgagor, in exclusion or defiance of the rights of the mortgagee, is a conversion for which such agent is liable to the mortgagee, though the sale is made in good faith, and without actual notice of the mortgage." (Citing cases.)

Conceding that the mortgage created a lien on the property included therein, does the evidence before the Court establish that the "14 animals" sold by defendants on August 11, 1953, were covered by and included in the mortgage?

The plaintiff contends that the document, plaintiff's Exhibit 4, set forth in Finding of Fact No. 5, is sufficient to establish that cattle owned by Grover Jernigan, the mortgagor, and covered by the mortgage were sold by the defendants. This document was furnished to plaintiff as a result of the interrogatory propounded to defendants. A reference to the interrogatory, which has heretofore been set forth in the statement of the case, discloses that the plaintiff only inquired if defendants kept "a daily sales record on August 11, 1953", and if so, that the defendants attach a copy of said record for that day as it pertains to Grover Jernigan, Route 1, Gentry, Arkansas.

 It should be noted that there was no inquiry whether the daily sales record, if one existed, was made in the regular course of such business, or whether it was the regular course of such business to make such a record, or in the event that the record was not made contemporaneously with the happening of the event inquired about whether it was made within a reasonable time thereafter. The document so obtained by plaintiff did not become admissible in evidence merely because the defendant had furnished the same to the plaintiff in response to its very limited interrogatory. The right of discovery given by Rule 34, F.R.C.P., is as broad as the "scope of the examination permitted by Rule 26(b)". The Rule operates broadly to permit a party to obtain pre-trial factual data, and the mere fact that factual data or documents are obtained through the discovery process does not determine their admissibility as evidence. 4 Moore's Federal Practice, 2d Ed., Sec. 34.21, pages 2482–83.

Title 28, U.S.C.A. § 1732, provides:

"In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter.

"All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility.

"The term 'business,' as used in this section, includes business, profession, occupation, and calling of every kind. June 25, 1948, c. 646, 62 Stat. 945."

 To the same effect, see Section 28–928, Ark.Stats.1947, Anno. Before a record becomes admissible under the statute it must appear that it was the regular course of the business to make such a record at the time of the transaction or within a reasonable time thereafter, and that the record was in fact made in the regular course of business.

██ ██ The document as introduced in evidence appears to be in the handwriting of a stenographer or a clerk, and no effort was made to establish the source of the information upon which the statements made therein were based, or whether the person making the record did so from his or her personal informa-

tion, or whether it was based upon statements made by third persons. The defendants made no objction to the introduction of the document, and notwithstanding the lack of proof of the preliminary facts the Court has considered the document in an effort to ascertain what competent evidential facts, if any, have been established by the record. It has been considered as an admission of the defendants insofar as the statements made therein disclose that they were based upon the personal knowledge of the defendants. But the fact that the Court admitted the document in evidence does not mean that all of the statements appearing therein should be accepted as true. Compare, Lomax Transp. Co. v. United States, 9 Cir., 183 F.2d 331.

■■■■■ The Court is of the opinion that the document is presumptively correct insofar as it purports to set out the sales price of the various calves, since that information was within the personal knowledge of defendants and was the result of the sale conducted by defendants. Likewise, the statement that one Clyde Ford was paid $10 for hauling the cattle may be considered as sufficiently established as true, since that matter would also be within the personal knowledge of the defendants. However, the document is not evidence that Grover Jernigan personally visited defendants' place of business on August 11, 1953, the date of the sale. Apparently his name appears as consignor because of the representation of the hauler, Clyde Ford, that the calves were consigned by Grover Jernigan. Nor is there any evidence that Jernigan was paid one penny as a result of the sale of the calves. This being true, the statement in the sales record that the calves were consigned by Grover Jernigan is based upon pure hearsay, and to accept that statement as evidence in this case would be to base a finding on compounded hearsay. Compare, United States v. Grayson, 2 Cir., 166 F.2d 863, 869.

■■■■■ In the Grayson case the court at page 869 of 166 F.2d said:

" 'Multiple hearsay' is no more competent now than single hearsay was before."

The Court is convinced that this sales record, standing alone, is insufficient to establish that the particular calves named therein were owned by Grover Jernigan or were covered by the mortgage, either as accretions, replacements, additions, or newly acquired livestock.

■■■■■ It must be remembered that the burden of proof was on the plaintiff to establish its case. Plaintiff called no witnesses to establish the alleged fact that cattle owned by Jernigan and covered by the mortgage were sold and converted by defendants. Moreover, plaintiff offered no reason for its failure to call Jernigan or Ford as witnesses to prove such ownership. Nor did plaintiff call either of the defendants as adverse witnesses under Rule 43, F.R.C.P., to determine who was present when the sale was allegedly made on August 11, 1953, and the particulars of the transaction. In other words, plaintiff was content to rely upon the document as establishing the essential elements of its case.

As above stated, the Court is of the opinion that the document does not establish that the calves described therein were owned by Jernigan and were covered by the mortgage. In the first place, there is nothing in the record to show that Ford actually hauled the cattle from Jernigan's farm to defendants' place of business, and apparently the statement in the sales record that the calves were consigned by Jernigan was based upon a statement by Ford or some other third party to that effect. Ford may have hauled the cattle from some other farm and through mistake or purposely stated that they were from Jernigan's farm. Secondly, even if Ford did in fact haul the cattle from Jernigan's farm, it is entirely possible that Jernigan did not own the cattle but was merely grazing them or handling them as an agent of someone else.

There are numerous other possibilities suggested upon the face of the document, particularly since the cattle evi-

**710**

dently were hauled to defendants' place of business by a third party, and no fact was proven from which the Court might infer that Jernigan himself was ever present at said place of business or had any connection with the sale.

■ Therefore, the competent evidence and the allowable inferences do not establish that Grover Jernigan was the owner of the calves and that they were covered by the mortgage.

■ One other point might be noted. The measure of damages in a conversion action is the market value of the property converted. Parks v. Thomas, 138 Ark. 70, 77, 210 S.W. 141. In the instant case the only evidence relating to the question of market value is the sales record which purportedly shows the amount the cattle sold for on August 11, 1953. Undoubtedly evidence of the sales price is admissible on the question of market value, but it is not conclusive. Perkins v. Ewan, 66 Ark. 175, 179–180, 49 S.W. 569. There is no evidence as to the manner in which the sale was made, and it may be that the cattle sold at a price greater or less than their actual market value. However, since the Court has concluded heretofore that the evidence is insufficient to establish that Grover Jernigan owned the cattle or that they were covered by the mortgage, it is unnecessary for the Court to pass upon the sufficiency of the evidence to establish the market value of said cattle.

The complaint of plaintiff should be dismissed for failure to establish by a preponderance of the evidence its claim against the defendants.

### Conclusions of Law

#### No. 1

The Court has jurisdiction of the parties and the subject matter of this case.

#### No. 2

The plaintiff has failed to establish by competent evidence a claim against the defendants and the complaint of plaintiff should be dismissed.

#### No. 3

Judgment in accordance with the above should be entered.