## PARKS *v.* THOMAS.

### Opinion delivered March 10, 1919.

1. ADVERSE POSSESSION—TACKING SUCCESSIVE POSSESSIONS—EVIDENCE —In a suit for trespass on land, where, to establish title by adverse possession, it was necessary for defendant to tack his possession to that of a predecessor, it was competent to explain the character and extent of such predecessor's title.

2. EVIDENCE—ADMISSION BY GUARDIAN.—A guardian can make no admission in derogation of his ward's title.

3. TRESPASS—GOOD FAITH—EVIDENCE.—In an action of trespass by the guardian of a minor owner, testimony that the guardian had stated, before defendant cut a fence in committing the trespass complained of, that certain gravel was on defendant's land was admissible as evidence of defendant's good faith.

4. TRESPASS—PUNITIVE DAMAGES.—Evidence in trespass *held* insufficient to justify award of punitive damages.

5. TROVER AND CONVERSION—MEASURE OF DAMAGES.—Where property is wrongfully taken, the measure of damages is its market value where there is no testimony warranting punitive damages.

Appeal from Logan Circuit Court, Southern District; *James Cochran,* Judge; modified and affirmed.

### STATEMENT OF FACTS.

The parties to this litigation are coterminous proprietors of tracts of land which are made irregular in shape by Booneville creek, a tortuous stream running through the land, or, rather, forming the boundary of both tracts. Both parties deraign their title from one James Ross, who at one time owned the land on both sides of the creek at the point in controversy. Ross sold the land east of the creek to one J. P. Henderson and this is the land owned by appellee Thomas at the time of the institution of this suit; his father (from whom he had title by descent) having acquired the title by *mesne* conveyances from Henderson. Ross died, but his son and heir disposed of all the land west of the creek except a twenty-two-acre tract, which he sold and conveyed to one Sweeney, who conveyed to Bruer, who conveyed to appellant Parks. These deeds described the land by reference to Booneville creek.

Appellee brought this suit to recover damages, both compensatory and punitive, to compensate the alleged unlawful and malicious trespasses committed by appellant on the land of appellee. The complaint contained two counts. In the first count it was alleged that appellant, by force of arms, had broken and entered appellee's close, and had wilfully, wantonly and unlawfully cut down and destroyed appellee's post and wire fence there situated and had injured and damaged appellee's grass, herbage and soil. In the second count it was alleged that appellant had wilfully, wantonly and unlawfully broken and entered appellee's close and had taken and carried away appellee's soil, sand, earth, rock and gravel and had converted the same to his own use. There was a prayer in each count for damages both compensatory and punitive.

The answer specifically denied the allegations of both counts of the complaint, and further alleged that "in 1871 J. P. Henderson sold to —— Ross, the land now owned by the defendant, and that the said J. P. Henderson, who

owned the land now owned by the plaintiff and —— Ross, had an agreement about the line between their land, and that the said J. P. Henderson built his fence enclosing his land on the west side on the bank of the creek where the fence is now standing, and that the —— Ross joined his fence enclosing the land now owned by the defendant to the J. P. Henderson fence as it is at this time. That said fencing has been standing as it is at this time for the past forty years; that defendant and his assignees have had peaceable, open, adverse possession against the plaintiff and his assignees for the past forty years, paid the taxes thereon and have continuously exercised ownership over same for the said time of about forty years.

"Defendant further states that the gravel bed is west of the creek, near the ford, on defendant's land, and that defendant and his assignees have continuously exercised ownership over said gravel bed for the past forty years or thereabout."

There was a verdict for appellee on the first count for $300 and on the second count for $200, and this appeal has been prosecuted to reverse the judgment rendered for the sum total of the two verdicts. The court instructed the jury that appellee was entitled to recover compensatory damages on the first count, and under instructions, which are not questioned, submitted the right to recover compensatory damages under the second count, and gave instructions declaring the conditions under which punitive damages might also be assessed on either or both counts.

As grounds for reversal of the judgment, it is chiefly insisted that the court erred in directing a verdict on the first count, and in submitting the question of punitive damages on either count. Other errors are assigned which will be discussed in the opinion; while other assignments of error need not be discussed, as they relate to the punitive damages, which question we have disposed of upon the grounds stated in the opinion.

*A. S. McKennon* and *Kincannon & Kincannon,* for appellant.

1.   It was error to direct a verdict on the first count and in submitting the question of punitive damages to the jury under either count.   The testimony shows conclusively that the gravel bed was on the west side of the creek when Dr. Thomas purchased the land for plaintiff.   The testimony fails to justify a verdict for any punitive or exemplary damages under either count.   104 Ark. 89.   The verdict is excessive.   The rental value of the land was shown to be $8 and the value of the gravel $37, a total of $45, while the verdict was for $300 as compensatory damages, which is excessive.   The measure of damages where property is unlawfully taken is the value of the property taken.   126 Ark. 554; 101 *Id.* 34; 85 *Id.* 111.   The verdict fixes a specific sum as damages and is grossly excessive as compensatory damages, without any intimation whatever that the jury found any ground for punitive damages, defendant was entitled to know whether he was required only to pay plaintiff reasonable compensation in money, the actual damage to the gravel bed and to his property by his act of tearing down the fence and depriving plaintiff of the use of his pasture. It was the duty of the jury to observe and follow the instructions of the court.   It is evident that punitive damages were allowed, for which the judgment should be reversed.   Cases *supra.*

2.   There were errors in admitting the testimony and in counsel's statement in opening the case that "one Mrs. Gray, a poor widow, had her cow in the pasture and that defendant turned it out," etc.   Mrs. Gray was not a party to the suit and testimony to sustain this statement would be wholly irrelevant; it could prove no issue and was calculated to prejudice the minds of the jury and clearly erroneous.   87 Ark. 461; 12 A. & E. Enc. Pl. & Pr. 727; Thompson on Trials, § 963. ·

Bryan Thomas was permitted to testify that on sale of the land the purchaser reserved $500. of the purchase money.   This was too remote and could not bind or affect defendant, nor establish any issue.   Also C. M. Roberts was permitted to testify that he purchased plaintiff's

land and reserved $500 of the purchase price because of this suit. This was not an element of damage and could not be considered for any purpose. Plaintiff's counsel was permitted to ask Mrs. Gray about pasturing her cow with defendant and what she had paid him. H. Sweeney was allowed to testify that he did not buy or claim the gravel bed nor buy nor claim any ground across the creek from the west; that he did not buy or claim or take into possession any ground adjacent to his land on this side of the creek or claim anything on this, the west side, of the creek. As defendant deraigns title through Sweeney this was prejudicial error. Defendant also offered to prove that he had sold gravel from the bed; that Hiram Tatum, then in control of plaintiff's property and acting for plaintiff's guardian, objected to money being paid to defendant for gravel. That afterwards in conversation with defendant he withdrew said objections, stating that he believed that said gravel bed belonged to defendant and would make no further objections to defendant's use of it. This was objected to by plaintiff and the court erred in sustaining the objection. Counsel for plaintiff was permitted to ask plaintiff on the stand as a witness, "You claim to be a law-abiding man. If you are, why did you with strong hand tear down this property and not resort to the courts?" Defendant excepted to the ruling of the court. It was vexatious and disrespectful, and its purpose to bring defendant into disrespect before the jury.

It was error by peremptory instruction to direct a verdict on the first count. 98 Ark. 334; *Ib.* 370; 105 *Id.* 136; 61 *Id.* 429; 131 *Id.* 153; *Ib.* 197; Warville on Abstracts of Title, 53-4, 314; 131 Ark. 197.

*John P. Roberts* and *Evans & Evans,* for appellee.

1. There is no error in the instructions; they correctly state the law as laid down by this court.

2. The evidence sustains the verdict on both counts. A verdict for punitive damages is sustained by the evidence and there is no error and the judgment should be

affirmed with 10 per cent. penalty, as the appeal was taken merely for delay.

SMITH, J., (after stating the facts).　Appellant complains of the admission of the testimony of Sweeney to the effect that he did not buy or claim the gravel bed in controversy; that he did not buy or claim any portion of ground across Booneville creek from the west where appellant cut appellee's fence, and that he did not buy or claim or take into his possession any portion of the ground on the east side of the creek where the fence was cut; the ground of the objection being that the conveyances are the best evidence of what any vendee took by his deed.　It will be observed, however, that appellant did not allege ownership of the land where the alleged trespasses were committed by reason of any deed to him. The claim of title alleged was based upon adverse possession for a period of forty years.　Appellant obtained his deed in October, 1913, and could not, therefore, of course, have had such possession as would have ripened into title.　Sweeney was one of his immediate predecessors in title, and it would have been necessary for appellant to tack his possession to that of Sweeney's to give title by adverse possession.　The deeds in the chain of title from Ross were not introduced by appellant, but were introduced by appellee over appellant's objection; and on the issue of adverse possession it was competent for Sweeney to explain the character and extent of his possession.　*Welch* v. *Welch,* 132 Ark. 227, 228, 238; *King* v. *Slater,* 96 Ark. 589, 590, 593; *Waldrop* v. *Ruddell,* 96 Ark. 171, 175; *Hughes Bros.* v. *Redus,* 90 Ark. 149, 151; *Jeffery* v. *Jeffery,* 87 Ark. 496, 497, 498; *Foster* v. *Beidler,* 79 Ark. 418, 426; *Seawell* v. *Young,* 77 Ark. 309, 315, 316; *Eaton* v. *Sims,* 59 Ark. 611, 613; *Richardson* v. *Taylor,* 45 Ark. 472, 478.

There was no testimony in regard to any agreement fixing the boundary, and there was no testimony legally sufficient to support a finding that appellant had title to any land not described in his deed, and the court did not err, therefore, in so directing the jury.

Appellant calculates the compensatory damages recoverable on the first count at $8 and on the second count admits a liability of $37, if liable at all; and appellee makes no showing that the compensatory damages exceeds the sum of $45, so that appellee is entitled to have the judgment affirmed to the extent of $45 on account of compensatory damages; and it remains only to determine whether the judgment should be affirmed for the balance of the verdicts of the jury, which necessarily represent the amount assessed by way of punitive damages.

Appellant admits that he twice cut the fence, but no circumstance of force or intimidation accompanied his act on either occasion. There was no threat of violence in doing so, and there was no wilful or wanton destruction of property, and no damage was done to the freehold except to the extent of the value of the gravel taken. Appellee's land was in possession of one Suttles, who was using it as a pasture, and he testified on behalf of appellee as follows: "I was pasturing this when this high water came; my cow was in the pasture at that time and I went down and cut the fence next to the meadow and brought the cow out that way. Mr. Parks (appellant) had fenced up his pasture and joined the fence across at the upper end, and in putting this fence back where we had it I joined onto his fence at the north end, joined the fence where I joined it before in the bend of the creek, on the creek on the west side. I went probably six or eight feet nearer the water, the fence stayed there, I don't know, three or four days, and Mr. Parks spoke to me about the fence, said you got a little too far over. I said, 'Yes, sir;' he said it was his, and I told him he would have to see Bryan Thomas or Mr. Roberts about it, and a day or so afterwards it was cut and thrown back." He further testified that "the fence was cut in two places where I joined onto him and it was cut where I went to the creek and posts pulled up and thrown back where the fence used to set." It appears, therefore, that appellant was only attempting to restore the fence to the line where

it ran before Suttles moved the fence out towards appellant's land. Suttles restored the fence a few days after it had been cut down to its advanced line, and appellant again pulled it down; but no circumstances of force, threat or violence accompanied that action. Suttles testified that appellant said to him that he would have the line located by a survey, "as Bryan Thomas was coming twenty-one years old." This suit was brought originally by appellee's guardian, but appellee attained his majority before it came to trial, and it proceeded to trial in his own name after an order to that effect had been made.

As bearing upon the question of good faith appellant offered to show that appellee's brother-in-law, who was also appellee's guardian, had stated prior to the time the fence was cut that the particular gravel here involved was on appellant's land; but this testimony was excluded. This testimony was incompetent on the question of title, as the guardian could make no admission in derogation of his ward's title. But the testimony should have been admitted as bearing on the question of good faith. It affirmatively appears that there was a genuine controversy which was submitted to the jury upon the conflicting testimony of a number of witnesses in regard to the channel of the creek as affecting the boundary of the respective tracts of land. It is true that some angry words were exchanged between appellant and one Roberts, who lived on appellee's land, after the tearing down of the fence; but this occurred after the fence had been cut down and related to a past transaction.

We, therefore, conclude that there was no testimony legally sufficient to justify the infliction of punitive damages, and the court should have eliminated this branch of the case from the jury. *Brown* v. *Allen,* 67 Ark. 386; *Kelley* v. *McDonald,* 39 Ark. 333. Where property is wrongfully taken from the owner, the measure of damages is the market value of the property taken, in the absence of testimony showing the circumstances of the taking to be such as to warrant the infliction of punitive damages; and there appears to be no conflict as to the sum

which will compensate the actual damage done. This is the only error we find in the record, and the judgment will therefore be reduced to $45, and, as thus modified, affirmed.