WESTARK PRODUCTION CREDIT ASSOCIATION v. SHOUSE.

5-1278                                    305 S. W. 2d 127

Opinion delivered July 1, 1957.

[Rehearing denied Sept. 30, 1957]

*Hardin, Barton, Hardin & Garner,* for appellant.

*Donald Poe,* for appellee.

SAM ROBINSON, Associate Justice.   The appellant, Westark Production Credit Association, hereinafter referred to as Westark, filed this suit against appellee, F. A. Shouse, alleging that over a period of time it loaned to Shouse an amount in excess of $100,000, and that Shouse owes a balance on the account of $26,867.47, and interest thereon.  Shouse contends that he has repaid to Westark all the money he borrowed.  In fact, he says that he paid to Westark an amount in excess of that which he borrowed.  The chancellor made a finding that Shouse had repaid all of the money he borrowed from Westark and that Westark had converted to its own use stock which Shouse owned in Westark of the value of $1,985.  Westark has appealed.

The circumstances giving rise to this cause involve the activities of the former secretary-treasurer-manager of Westark, and his connections with appellee, Shouse. The secretary-treasurer-manager, hereinafter called manager, was found derelict in his duties after an accounting conducted by federal auditors, and suit was filed by Westark against the Fidelity & Deposit Company of Maryland to collect on a fidelity bond for the defalcation of the manager.  There was a settlement be-

tween Westark and the bonding company, and the manager was relieved of further responsibility. In the suit filed by Westark against the bonding company it was alleged that the defalcation of the manager in connection with the Shouse account amounted to $29,403.33, and against this amount was credited $1,725 for stock which Shouse owned in Westark.

The evidence on the part of Westark in the case at bar consists of ledger sheets which reflect all charges to Shouse, both valid, and those made by the manager in the course of his manipulations, as well as the payments on the account made by Shouse. These ledger sheets show that Shouse owns 412 shares of Class B stock in Westark. The evidence is substantial to the effect that during the period of the various transactions covered by the ledger sheets there was a tendency on the part of the manager, Mr. Shouse, and other persons, to sign drafts in blank with the payees and the amounts unknown, and, generally, to conduct the business of Westark in a very slipshod manner. The manager apparently was engaged in procuring dairy cattle for several of Westark's customers, and had an arrangement whereby Shouse would purchase the cattle in Kansas, Missouri and Wisconsin, truck them to Arkansas and deliver them to customers of the manager. Shouse had a letter of credit signed by the manager, as such, of Westark in an unlimited amount, which reads as follows: ''To whom it may concern: Re: F. A. Shouse. This is to certify that the above captioned person is hereby empowered and authorized to execute drafts to be drawn on our account through the First National Bank of Fort Smith, Arkansas.''

It is unnecessary to detail the transactions which the chancellor found were improperly charged to Shouse's account, but they are in two categories: First, purchases made by Shouse for the benefit of the manager of Westark were erroneously charged to Shouse; second, fictitious loans for the personal benefit of the manager were charged to Shouse. Also, payments were made by Shouse for which he received no credit.

The records of the federal auditor·· made in connection ·with ·the. investigation of. the manner in which the manager ,of Westark conducted its .affairs were introduced in evidence. These records, when considered along with the testimony of other witnesses, are convincing that the balance which the complaint alleges is owed by Shouse is the result of the wrongful manipulations of the manager. A preponderance of the evidence sustains the chancellor's finding that Shouse is not indebted to Westark in any amount.

The trial court was also correct in holding that there was a conversion of Class B stock of the appellee. Professor Prosser, in his work on Torts (*Prosser: Law of Torts,* page 66), defines conversion and states: ''Conversion may be committed by acquiring possession of the goods, with an intent to assert a right to them which is in fact *adverse to that of the owner.''* (Emphasis ours). *Barnett Brothers Mercantile Company* v. *Jarrett,* 133 Ark. 173, 202 S. W. 474. The fact that the amount of loss claimed by Westark was occasioned by the manipulations of their own agent and the fact that Westark allowed the bonding company credit for the Class B stock of Shouse, together with refusal to recognize Shouse's ownership of the stock free of any indebtedness, show an intent to assert a right adverse to that of the owner.

Appellant cites *Young* v. *Westark Production Credit Association,* 222 Ark. 55, 257 S. W. 2d 274, as authority for his contention that there could be no conversion, but the *Young* case is clearly distinguishable from the case at bar; there, the appellant was attempting to offset the value of his stock against an unpaid balance. Here, the appellee has paid his debt to Westark.

We are unable to agree, however, with the trial court's determination of the amount involved. The federal auditor, in his report introduced in evidence, found

that the amount of $335.00, or 67 shares of Class B stock, had been erroneously credited to the account of Shouse. From the record, this report appears to be correct, and the appellee is entitled to a judgment on his cross complaint of $1,725 instead of $1,985, and the judgment is modified to that extent.

Affirmed, as modified.