FORD MOTOR CREDIT COMPANY v.
George HERRING and Cecil GEISLER

79-251                                         589 S.W. 2d 584

Opinion delivered November 26, 1979
(In Banc)

202

*Griffin Smith & W. R. Nixon, Jr.*, by: *W. R. Nixon, Jr.*, for appellant.

*Ray & Donovan*, for appellees.

Frank Holt, Justice. The appellees were purchasers of two pickup trucks which were financed under retail install-ment contracts with the appellant. The contracts authorized repossession of the vehicles upon the buyer's default. When each appellee became delinquent on his monthly payments, appellant repossessed the trucks in which various items of personal property were stored. Appellant brings this appeal from a judgment awarding appellees $2,000 in actual dam-ages and $17,000 in punitive damages.

Appellant first contends that the trial court erred in submitting the issue of conversion to the jury since no ele-ment of force, threats of force, or breach of the peace ac-companied repossession. In pre-code cases, we have sus-tained a finding of conversion only where force, or threats of force, or risk of invoking violence, accompanied the repos-session. *Manhattan Credit Co., Inc.* v. *Brewer*, 232 Ark. 976, 341 S.W. 2d 765 (1961); *Kensinger Acceptance Corp.* v. *Davis*, 223 Ark. 942, 269 S.W. 2d 792 (1954).

Ark. Stat. Ann. § 85-9-503 (Supp. 1977) provides in pertinent part of the code:

Unless otherwise agreed, a secured party has on default the right to take possession of the collateral. In taking possession, a secured party may proceed without judi-cial process if this can be done without breach of the peace or may proceed by action.

Here the contract recited that upon default by the appellee debtors, appellant creditor could invoke the remedies of the U.C.C. "including the right to repossess the property wherever the same may be found with free right of entry." Clearly the appellant had the contractual and statutory au-thority to repossess the vehicles. *Teeter Motor Co., Inc.* v. *First National Bank of Hot Springs*, 260 Ark. 764, 543 S.W. 2d 938 (1976). In the case at bar there was no personal confrontation or contract between the repossession contrac-tor and either of the appellees when the vehicles were repos-sessed. There was open access to the vehicles parked in a private driveway or adjacent to the houses. Both were re-moved during the evening hours without entry into, or dam-

ages to, any structure. Within a few minutes following repossession of Herring's truck, he, in a telephone conversation with the repossessor, admittedly demanded only the right to retrieve his personal items, stating "they [Ford] can have the truck." The next day he telephoned appellant Ford asking permission to "pick up" his payments which was refused. Appellee Geisler's only contact with the appellant was in this same telephone conversation the next day following the repossession. In *Teeter, supra,* we upheld the right of the seller to repossess the vehicle upon default if it could be done without a breach of the peace as provided in § 85-9-503. Here the evidence is clearly insufficient to establish a fact question that the repossession of the trucks constituted a conversion.

Even though the repossession of the vehicles was proper, the question of whether appellant's subsequent retention of certain personal property stored in the trucks constituted conversion was properly submitted to the jury. Conversion is the "exercise of dominion over the property in violation of the rights of the owner or person entitled to possession." *Thomas* v. *Westbrook,* 206 Ark. 841, 177 S.W. 2d 931 (1944). We have also defined conversion as the wrongful taking or dominion over one's property in subversion and denial of his rights irrespective of whether there was a demand and refusal for its return. *Barnett Bros. Merc. Co.* v. *Jarrett,* 133 Ark. 173, 202 S.W. 474 (1918); *Plunkett-Jarrell Grocery Co., et al* v. *Terry,* 222 Ark. 784, 263 S.W. 2d 229 (1953); *Meyers* v. *Meyers,* 214 Ark. 273, 216 S.W. 2d 54 (1948); and *Westark Production Credit Association* v. *Shouse,* 227 Ark. 1141, 305 S.W. 2d 127 (1957). Here, however, the contract specifically provided that "any personalty in or attached to the property when repossessed may be held by the seller without liability . . ." The property consisted mostly of various pieces of concrete equipment and tools jointly owned and stored in the trucks at the time of the repossession. The appellees were partners in the concrete business. The trucks and equipment were used in their means of livelihood. Although the appellant was authorized under the contract to hold the personal property, it could do so only as long as it was necessary to secure possession of the trucks. *Jones* v. *General Motors Acceptance Corp.* 565 P. 2d 9 (Okla. 1977); *General Motors Acceptance Corp.* v. *Vincent,* 183 Okla. 547, 83 P. 2d 539

(1938); and *Ford Motor Credit Co.* v. *Waters,* 273 So. 2d 96 (Fla. App. 1973).

As previously indicated, appellee Herring telephoned the repossession contractor shortly following the repossession and advised him that he "needed my [his] personal effects and tools out of my [his] trucks." Herring requested that the contractor remain a few minutes at the local restaurant where the truck was parked until he, Herring, could arrive to discuss the return of the tools and equipment to him. Herring arrived approximately a minute later, and the truck and tools were gone. The morning after the repossession appellant's employee, in a telephone conversation, denied any knowledge of the tools. A written report by the repossession contractor, dated two days after the repossession, advised appellant about the existence of the personalty in the repossessed trucks. Appellees filed a lawsuit four days after repossession. Appellant released possession of the property to appellees about two months later through arrangements by their attorney. Appellee Herring testified that he and Geisler had to abandon a project due to appellant's retention of their jointly owned concrete equipment and tools. There is no evidence that the retention of the personal property, following a demand for its return, was necessary to the repossession of the trucks. In viewing the evidence most favorable to the appellees, as we must do on appeal, we hold that appellant is not absolutely shielded from liability by the contract terms when it can reasonably be inferred, as here, that it intentionally withheld the property after a demand had been made for it.

Appellant next asserts that there was insufficient evidence to support the jury's award of $2,000 actual damages for the conversion of the trucks and personal property. We agree. As previously indicated, there was a submissible issue only as to conversion of the personalty. Appellant correctly states that the proper measure of damages for the conversion of the personal items was their market value at the time and place of the conversion. *U.S.* v. *Bartholomew,* 137 F. Supp. 700 (D.C. Ark. 1956); *Hardin* v. *Marshall,* 176 Ark. 977, 5 S.W. 2d 325 (1928); *American Soda Fountain Co.* v. *Futrall,* 73 Ark. 464, 84 S.W. 505 (1905); and *Parks* v.

*Thomas,* 138 Ark. 70, 210 S.W. 141 (1919). The fact that the majority of the items were eventually returned to the appellees does not bar recovery of damages for their conversion but may mitigate the damages. *Norman* v. *Roberts,* 29 Ark. 365 (1874); and *Plummer* v. *Reeves,* 83 Ark. 10, 102 S.W. 376 (1907). Here there was no evidence as to the value of various missing items. As to the items retrieved by appellees, the evidence, as to most items, was primarily based upon the purchase, replacement and rental price. Obviously, the evidence was deficient and did not comport with the recited standard.

Appellant next contends that the court erred in allowing the appellees to read to the jury a colloquy between counsel which took place during a discovery deposition in a different lawsuit between the parties to this action. The court admitted this verbal exchange between counsel as evidence of agency between appellant and its repossessor contractor. From the record before us, it is impossible to determine the precise issues in the prior lawsuit even though the same parties, lawfirms and incidents were involved. It is argued, however, by the appellees that the conversion of the personalty was in issue there and the same issue is presented here plus conversion of the trucks. Therefore, say appellees, the exchange between the parties' counsel in the discovery proceeding is admissible. Even so, the parties, however, may modify or amend their pleadings resulting in additional issues upon a remand. *Sanders* v. *Walden,* 214 Ark. 523, 217 S.W. 2d 357 (1949); and *Loyd* v. *Southwest Ark. Utilities Corp.,* 264 Ark. 818, 580 S.W. 2d 935 (1979). Furthermore, the issue of agency was not raised on this appeal.

Appellant next asserts that the court erred in instructing the jury regarding punitive damages since there was no evidence of force, oppression, or intimidation in connection with the repossession. In *Clark et al* v. *Bales,* 15 Ark. 452 (1854), we said the jury "had the right to take into consideration . . . . the vexation to [plaintiff's] feeling[s], the inconvenience to him arising from the deprivation of his property [hogs], as well as its value, and then to add something by way of 'smart money,' or exemplary damages." Exemplary damages are proper where there is an intentional violation of

another's right to his property. *Kelly* v. *McDonald,* 39 Ark. 387 (1882); *Ft. Smith I. & S. Mills* v. *So. R.B.P. Co.,* 139 Ark. 101, 213 S.W. 21 (1919); and *Parks* v. *Thomas, supra.* In view of the evidence previously recited, we hold that, although the taking was proper, the retention of the personalty after demand for its return constituted a submissible fact question on the issue of punitive damages.

Appellant's last assertion for reversal is that AMI Civil 2d 2217 does not accurately state the law on punitive damages in a conversion action and, therefore, the court erred in reciting this instruction to the jury. That instruction provides in pertinent part:

> Punitive damages may be imposed to punish a wrongdoer and to deter others from similar conduct. Before you can impose punitive damages you must find that _____ knew or ought to have known, in the light of the surrounding circumstances, that his conduct would naturally or probably result in injury and that he continued such conduct [with malice or] in reckless disregard of the consequences from which malice may be inferred.

We agree with the appellant that this instruction was formulated for use in negligence cases. See Committee Comment AMI Civil 2d XXIX. It was not designed, as here, without modification to apply in a case of an intentional tort; i.e., conversion.

Reversed and remanded.

HARRIS, C.J., not participating.