Matthew AUSTON d/b/a Auston & Sons Trucking, Plaintiff,

v.

Landreth LOYD, an Individual and Loyd's Garage, A Division of Loyd's S-F Inc., An Arkansas Corporation, Defendants.

Civ. No. 81–5004.

United States District Court,
W. D. Arkansas,
Fayetteville Division.

Jan. 6, 1982.

Walter R. Niblock, Niblock & Odom, Fayetteville, Ark., for plaintiff.

Charles E. Davis, Davis & Bracey, Springdale, Ark., for defendants.

## MEMORANDUM OPINION

WATERS, Chief Judge.

Plaintiff filed suit in this matter on January 15, 1981. Plaintiff alleges jurisdiction of the Court by reason of a complete diversity of citizenship and the requisite jurisdictional amount, claiming that he is a citizen of California, that the individual defendant, Landreth Loyd, is a citizen of Arkansas, and that the corporate defendant is an Arkansas corporation with its principal place of business in Arkansas.

738

It is alleged in the complaint that the plaintiff is the owner of a 1972 Kenworth Conventional Tractor then in the possession of the Arkansas State Police in Springdale, Arkansas, which, it is alleged, was seized from the defendants by the State Police.

The complaint alleges that on or after May 13, 1979, the defendants converted the tractor to their own use and because of such conversion and unlawful detention by the defendants, that the plaintiff was damaged in the total amount of $52,000.00 ($27,000.00 value of tractor and $25,000.00 lost profits).

Plaintiff prayed for an order of the Court directing the Arkansas State Police to return the tractor to plaintiff; for an order quieting title to such vehicle in plaintiff; and for judgment against the defendants in the amount of $25,000.00 for lost profits; or, in the alternative, for a judgment against the defendants in the amount of $52,000.00, plus interest from the date of conversion, and for attorney's fees and costs.

The defendants answered, essentially denying all material allegations of the complaint with the exception of jurisdictional allegations. The parties waived trial by jury and the matter was tried to the Court on December 4, 1981. The Court took the case under advisement pending receipt of briefs from the parties in support of their respective contentions. The briefs have been received and considered, along with the pleadings and evidence, and the Court now makes and files herein its findings of fact and conclusions of law, separately stated.

FINDINGS OF FACT

From the evidence adduced at the trial in this matter, the Court makes the following findings of fact:

1. That the plaintiff is a resident of California; that the individual defendant is a resident of Arkansas; that the corporate defendant is an Arkansas corporation with its principal place of business in Arkansas; and that the amount in controversy is in excess of $10,000.00, exclusive of interest and costs.

2. That prior to May 13, 1979, the plaintiff was the owner of and in possession of a 1972 Kenworth Conventional Tractor and that on or about such date such tractor was stolen from him in California.

3. That the individual defendant, Landreth Loyd, is the owner of the corporate defendant and that such corporate defendant was prior to and subsequent to May 13, 1979, among other things, in the business of rebuilding tractor rigs from salvaged tractor parts acquired from various sources.

4. That shortly prior to May 13, 1979, the defendants purchased a wrecked 1978 Kenworth as salvage from an insurance company located in Missouri, and using the frame from said vehicle and other parts thereof, built the vehicle which, at the time of trial, was in the custody of the Arkansas State Police at its headquarters in Springdale, Washington County, Arkansas.

5. That subsequent to May 13, 1979, the defendants purchased certain Kenworth tractor parts, disassembled, from one Larry Mitchell, who transported such parts to Springdale, Arkansas, in an enclosed cab and delivered same to defendants.

6. That among the parts purchased from Larry Mitchell was a hood, cab and sleeper assembly which had been taken from the tractor stolen from the plaintiff.

7. That defendants used the hood, cab and sleeper assembly, after making certain repairs and improvements thereon, in rebuilding the tractor which is the subject matter of this lawsuit.

8. That no other portions of the tractor located at the State Police Headquarters in Springdale, Arkansas, belonged to the plaintiff, but, also in the custody of the State Police is the rear clip assembly (rear portion of the frame with attached tandem dual wheels) which came from the vehicle stolen from the plaintiff, which rear clip assembly was taken by the Arkansas State Police from the "boneyard" of the defendants.

9. That the rear clip assembly had been acquired by the defendants at an undeter-

mined time and was in their custody and control at the time that it was seized by the Arkansas State Police.

10. That in approximately December of 1979 the Federal Bureau of Investigation, the National Auto Theft Bureau, the Arkansas State Police and local authorities began investigation of a theft ring which allegedly stole tractor-trailer rigs, disassembled same, and sold the parts, and during such investigation, such authorities discovered that the hood, cab and sleeper assembly on the subject tractor and the rear clip assembly found in the defendants' "boneyard" had come from the tractor stolen from the plaintiff, but that other major component parts of the tractor rebuilt by the defendants and seized by the authorities did not come from plaintiff's stolen tractor, but, instead, were legitimately acquired by the defendants in the course of their business. Such determination was made in various ways, including raising and determining hidden serial numbers on various components which were then traced to their origin.

11. That the combined fair market value of the hood, cab and sleeper assembly and the rear clip assembly which came from plaintiff's stolen vehicle, at the time that they came into the custody, possession and control of the defendants was $10,000.00.

## DISCUSSION

The Court is in sympathy with the plaintiff because there is little question but that prior to May, 1979, he owned and utilized in his business a Kenworth tractor rig of a substantial value, and that on May 13, 1979, such tractor was stolen from him, permanently depriving him of its use. However, the Court must conclude that the plaintiff has simply failed to prove by a preponderance of the evidence that the Kenworth tractor which is presently in the custody of the Arkansas State Police in Springdale, Arkansas, is the tractor that was stolen from him. In fact, the evidence preponderates very heavily against such a conclusion.

While it was apparent at the trial that Mr. Auston is very earnest in his belief and contention that he should have the tractor in possession of the State Police returned to him, the evidence simply does not support this and the Court cannot, under the evidence adduced at the trial, make such a finding. When Mr. Auston's evidence submitted at the trial is boiled down to its substance, what he and his witnesses say is that prior to May 13, 1979, he owned a Kenworth tractor which was stolen from him on that date, and that the tractor located in Springdale looks like the one that had belonged to him. It is true that he and his witnesses attempted to point out features that they say were on his tractor which they believe are also on this one which he thinks shows that this tractor is his tractor, but the Court finds that this evidence simply does not support his contention that the entire tractor belongs to him, especially in view of the uncontradicted evidence of the authorities who investigated the theft ring. Mr. Dick O'Connell of the Federal Bureau of Investigation testified that, through various specialized procedures and tests, the FBI was able to determine the serial numbers of various major component parts, and it was Mr. O'Connell's testimony that it was determined that only the hood, cab and sleeper assembly came from the vehicle stolen from the plaintiff. He testified that the serial numbers from most of the other major component parts used to rebuild the vehicle in question were discovered by various means and these parts traced to their origin. He testified that the engine did not come from Auston's vehicle, but was traced to a vehicle owned by a man in Poteau, Oklahoma. He testified that the frame had been purchased by Loyd from a source in Missouri and had not come from the Auston vehicle. The front axle and rear axle, according to Mr. O'Connell, was purchased by the defendants from legitimate sources and did not come from the stolen vehicle. The only major component part that the authorities were not able to trace to its origin was the transmission, and, because no serial numbers of this portion of the vehicle could be identified, the vehicle from which it came could not be determined. However,

there was certainly no evidence adduced at the trial which indicates that the transmission came from the plaintiff's vehicle.

■ It is elementary that the plaintiff has the burden of proving his case, and he simply did not do so. In order to prove his claim, it was incumbent upon the plaintiff to prove, by a preponderance of the evidence, three elements: (1) property in himself; (2) conversion by the defendants; and (3) the value of the property. *Whiteley v. Foremost Dairies*, 151 F.Supp. 914, 923 (W.D.Ark.1957). "Conversion is the exercise of dominion over the property in violation of the rights of the owner or person entitled to possession." *Ford Motor Credit Co. v. Herring*, 267 Ark. 201, 589 S.W.2d 584 (1979).

In the case at bar, the plaintiff simply was not able to prove a property interest in any portion of the vehicle rebuilt by the defendants and presently at the headquarters of the Arkansas State Police in Springdale, Arkansas, with the exception of the hood, cab and sleeper assembly. In addition, the evidence shows that the plaintiff had a property interest in the rear clip assembly at the time that it came into the custody and control of the defendants. Other than for these components, there is simply not competent evidence in the record from which the Court can find that the defendants converted any other portions of plaintiff's stolen vehicle.

In his brief filed in this matter, plaintiff contends that the Court should apply the holding of the Illinois court in *Troop v. St. Louis Union Trust Co.*, 25 Ill.App.2d 143, 166 N.E.2d 116 (1960). In that case the defendant commingled oil that it converted from the plaintiffs with other oil, and the Court held that since it was impossible to determine what portion of the oil was the converted oil and what portion came from other sources, the burden was upon the commingler to prove what proportionate part of the resultant mixture belonged to him and what portion was attributable to the converted oil.

The holding of that case simply is not applicable to the facts in this case. As was indicated above, most of the major component parts of the rebuilt truck were traced to their origin, and there was not such a commingling so as to make it impossible to determine from whence the component parts came. The Court finds that the burden was upon the plaintiff to prove the parts in which he had a property interest and remained the burden of the plaintiff throughout the trial.

Since the Court has found that the hood, cab and sleeper assembly and the rear clip assembly belonged to the plaintiff at the time that they came into the possession of the defendants, it must now find whether the defendants converted same. The Court finds that, by taking possession and using plaintiff's parts, the defendants exercised the requisite "dominion over the property in violation of the rights of the owner or person entitled to possession." *Thomas v. Westbrook*, 206 Ark. 841, 177 S.W.2d 931 (1944); *Ford Motor Credit Co. v. Herring, supra*. There is little question but that this is the case since the defendants did, without question, take parts of plaintiff's stolen vehicle and, after making substantial changes on them, utilized them in their business.

■ The Court finds that, although the property of plaintiff was converted by the defendants, such conversion was a good faith conversion. The general rule in Arkansas and elsewhere regarding the proper measure of damages for a good faith conversion is the market value at the time and place of conversion. *Ford Motor Credit Co. v. Herring, supra, citing U. S. v. Bartholomew*, 137 F.Supp. 700 (D.C.Ark.1956); *Hardin v. Marshall*, 176 Ark. 977, 5 S.W.2d 325 (1928); *American Soda Fountain Co. v. Futrall*, 73 Ark. 464, 84 S.W. 505 (1905); and *Parks v. Thomas*, 138 Ark. 70, 210 S.W. 141 (1919). Because, in the Court's view, the evidence does not support a conclusion that the defendants either acted intentionally or in bad faith, there is no basis for recovery by the plaintiff of the enhanced value of the component parts as permitted by holdings in cases such as *Boston Mutual Life Insurance Co. v. Power Manufacturing Co.*, 182 Ark. 374, 31 S.W.2d 541 (1930); *Bradley*

*Lumber Co. v. Hamilton*, 117 Ark. 127, 173 S.W. 848 (1915); and *Eaton v. Langley*, 65 Ark. 448, 47 S.W. 123 (1898). The Court finds that the plaintiff is entitled to recover from the defendants an amount equal to the fair market value of the hood, cab and sleeper assembly and the rear clip assembly in Springdale, Arkansas, at the time that defendants acquired same and exercised dominion and control over them. The Court finds that the combined fair market value of such components at such time and place was $10,000.00, and that the plaintiff should recover such amount from the defendants, jointly and severally.

The plaintiff also asks that the Court award him interest on the judgment from the date of conversion and attorney's fees. There is no basis for attorney's fees to be awarded, but the question of interest is a closer one.

The general rule in Arkansas is that interest runs from the date of a willful conversion. *Fitzgerald v. Investors Preferred Life Ins. Co.*, 258 Ark. 966, 530 S.W.2d 195 (1975); and *Bradley Lumber Co. v. Hamilton*, 117 Ark. 127, 173 S.W. 848 (1915). However, as indicated above, the Court has found that the defendants were not willful converters, and the Court believes that the better rule to be applied in this case is the one utilized in *Union Naval Stores Co. v. U. S.*, 202 F. 491, aff'd, 240 U.S. 284, 36 S.Ct. 308, 60 L.Ed. 644 (1916). Where the defendant has innocently purchased the property from the willful converter, interest runs not from the date of conversion, but from the date demand was made by the plaintiff. In this case, it is evident that the defendants were in no position to return the converted component parts at any time prior to judgment of this Court. Paragraph 7 of the complaint filed by the plaintiff alleges that the property was seized from the defendants by the Arkansas State Police "and is presently impounded at the Arkansas State Police Headquarters in Springdale, Arkansas, pending a determination of ownership by this Court . . . ." Thus, the Court finds that it would be unfair to award the plaintiff interest

from the date of conversion or from the date that it first had knowledge that it had converted plaintiff's goods because, through no fault of their own, they were in no position to return the goods. Thus, the plaintiff will be awarded interest only from the date of this judgment.

## CONCLUSIONS OF LAW

Based upon the facts found by the Court as outlined above, and for the reasons set forth in the discussion above, the Court makes the following conclusions of law:

1. That it has jurisdiction of the parties and the subject matter herein.

2. That shortly subsequent to May 13, 1979, the defendants converted to their own use the hood, cab and sleeper assembly and the rear clip assembly owned by the plaintiff which had come from a vehicle stolen from the plaintiff by third parties.

3. That such conversion was in good faith and was neither willful nor intentional.

4. That the combined fair market value of such converted component parts at the time of conversion in Springdale, Arkansas, was $10,000.00, and that the plaintiff should recover judgment in such amount from the defendants.

5. That plaintiff is not entitled to recover either attorney's fees or interest on such amount from the date of conversion, but is entitled only to interest at the rate provided by law from the date of this judgment.

A judgment in accordance with this opinion will be entered.