George A. BROWN *v.* CHAPMAN FARMS, INC.

85-280                                                    709 S.W.2d 404

Supreme Court of Arkansas
Opinion delivered May 19, 1986

*Wright, Lindsey & Jennings*, for appellant.

*Smith, Smith & Duke*, for appellee.

ROBERT H. DUDLEY, Justice. A jury found that appellant, George A. Brown, trespassed and intentionally destroyed soybeans owned by appellee, Chapman Farms, Inc. The jury awarded actual damages of $26,202.00 and punitive damages of $55,000.00. The sole issue on appeal is whether there was substantial evidence to support the award for punitive damages. We affirm the verdict.

In 1979, appellant leased 926 acres of farmland to appellee. The consideration for the lease was one-quarter of the crops of appellant, the landlord. The lease was renewed in varying forms through the 1982 bean season, but by that time, appellant and Don Chapman, the sole stockholder of appellee, were having serious disagreements. In August 1982, Don Chapman told appellant that he would not farm the land in 1983. Appellant accepted the land back, and in October or November of 1982, planted wheat on 487 of the acres. While the wheat was growing, appellant tried to find someone who would lease the farm for the 1983 bean season which runs from about June through December, depending on the weather. In late October or early November 1982, appellant told Chapman he was unable to find a tenant for the farm, could not get financing to farm it himself, and, as a result, had decided to sue Chapman to make appellee farm it again. Suit was filed, but settled in November 1982 by execution of a new lease calling for $55,000.00 cash rent to be paid before March 31, 1983, with the term ending December 31, 1983, or at the conclusion of the fall harvest, whichever occurred first. The lease did not provide a right of entry or a right of inspection for appellant, the landowner, but the parties did contemplate, and the lease provided, that appellant would plant wheat after appellee had harvested its 1983 beans.

In June and July 1983, appellee planted 630 acres of soybeans and insured the crop with the Federal Crop Insurance Corporation, an agency of the United States Government. Under the terms of the insurance, appellee was assured of collecting for 26 bushels of beans per acre on all acres planted before June 15 and for 20.5 bushels per acre on all acres planted before July 5.

By late October it became obvious that the amount of bushels actually produced per acre would not equal the insured amount, and the F.C.I.C. would have to pay the difference. As an example, on the acreage insured for 26 bushels, if the harvest only amounted to 10 bushels per acre, the F.C.I.C. would pay for the 16 bushel difference.

In late October, appellant told Chapman that appellee's beans were not worth the cost of harvesting and he wanted to disk the fields (destroy the crop) in order to begin planting wheat. Chapman replied that it would be necessary to have the written permission of the F.C.I.C. in order for the insurance benefits to be collectible. Chapman also contacted his attorney to have appellant stopped from disking the beans. Chapman's attorney was unable to contact appellant's attorney immediately.

Shortly thereafter, on November 8, the attorneys and their clients met, and appellant agreed not to disk any more ground. In the meantime, however, between November 1 and November 6, appellant had destroyed 187 acres of beans. Witnesses from the F.C.I.C. testified that tests showed the destroyed crop would have yielded 12.3 bushels of soybeans per acre. If the beans had not been destroyed, appellee would have received from the F.C.I.C. an amount to equal the 13.7 bushel difference between the estimated 12.3 bushels actually produced and the 26.0 bushels insured. However, the F.C.I.C. refused to pay the benefits because they did not consent to the destruction of the crop. Appellee thus lost not only the value of its crop, but also the difference between that value and the insured amounts.

Appellant contends that while his actions may have been ill-advised and precipitous, they were not malicious and he should not be liable for punitive damages. The argument is without merit. Malice does not have to be established by explicit proof, but may be inferred from a conscious indifference to the consequences of the act. *Olson* v. *Riddle*, 280 Ark. 535, 659

S.W.2d 759 (1983). Exemplary damages are proper where there is an intentional violation of another's right to his property. *Ford Motor Credit Co.* v. *Herring*, 267 Ark. 201, 589 S.W.2d 584 (1979). Here, there was an intentional violation of appellee's right to its beans and a conscious indifference to the consequences of destroying them.

■ Appellant argues that he should not be liable for punitive damages because he acted under the honest, although mistaken, belief that F.C.I.C. would pay benefits to appellee. The argument is no answer for even if the F.C.I.C. had paid all possible benefits, appellee would have lost the value of the beans in the field. Appellant's testimony on the issue was, at best, evasive. At one point, on cross-examination, he admitted that he expected appellee to "eat" the loss on the destroyed beans. He patronizingly added that by destroying the beans he saved the appellee the cost of harvesting. Viewing the evidence, and its reasonable inferences, in the light most favorable to the appellee, there was substantial evidence from which the jury could find that appellant knew appellee would be damaged by the intentional trespass and was simply indifferent to those consequences.

Affirmed.

PURTLE, J., not participating.