Bill WORTMAN *v.* Don SHIPMAN

87-70                                                    737 S.W.2d 438

Supreme Court of Arkansas
Opinion delivered October 5, 1987

*Callis L. Childs*, for appellant.

*Harkey, Walmsley, Belew & Blankenship*, by: *Leroy Blankenship*, for appellee.

TOM GLAZE, Justice. This civil case had its origin in events which resulted in a prior federal indictment against the appellant, charging him with deliberately assaulting a federal law enforcement officer, Don Shipman. Appellant was tried three times on that charge, each resulting in hung juries and mistrials. The United States government subsequently dismissed the federal charge against the appellant. Shipman then filed this tort suit against appellant, alleging appellant's negligent handling of a firearm caused injury to Shipman. He also alleged appellant deliberately, intentionally, willfully and maliciously shot him. Shipman was favored with a jury verdict, awarding him compensatory damages of $500.00 and punitive damages of $20,000.00. On appeal, appellant raises ten points for reversal. We concluded none of his arguments warrant a reversal, and, therefore, we affirm.

A brief discussion of the facts is necessary before considering appellant's arguments. Appellant's cabin and surrounding property is located in Searcy County, and it shares common boundaries with U.S. Forest Service property. Both federal and state law enforcement officers had conducted a surveillance near and around appellant's land because they believed marijuana was being cultivated in that area. Appellant conceded that he knew federal and state officers were suspicious of marijuana in the area and that he had complained about low flying aircraft, including helicopters, that had been employed to surveil appellant's land and surrounding property for marijuana. He also complained to the Arkansas Game and Fish Commission regarding one of its game wardens who had been on appellant's property looking for marijuana. These activities and events served as the backdrop for the shooting incident that occurred on July 31, 1983.

On July 31, because appellant was aware that individuals had been "sneaking" around the area, he cancelled plans to go on an outing. Instead, he positioned himself on a nearby bluff overlooking a roadway and waited until he saw two men (Shipman and his fellow officer) walking in the roadway. Appellant, armed with a twelve-gauge shotgun, confronted the men, and ordered them to lie face down in the road. Appellant claimed he did not know the men were federal officers, but Shipman and his fellow officer both testified they had informed appellant they were officers and offered to show him their identification. Aside from this conflict in testimony, all agree that soon after the two officers had dropped to the ground as directed by appellant, they jumped up and ran to escape when appellant shot at them several times. Appellant hit Shipman with one of the shots, injuring him in the leg. At trial, Shipman contended that the shooting was deliberate, that appellant knew he and his colleague were law enforcement officers and that appellant, in an attempt to protect his marijuana, deliberately ambushed them. Appellant, on the other hand, tried to show, without success, that he was unaware the men were officers, that he was merely attempting a citizen's arrest for their having trespassed on his property and that he shot Shipman in self-defense. In support of his story, appellant testified that his shooting was prompted because one of the men had reached for his revolver as they made their escape.

In addressing appellant's arguments, we first note difficulty

in meeting some points head-on because of the mixed criminal and civil legal theories advanced at the trial. Appellee filed this suit in tort, alleging ordinary negligence and tort of outrage. Appellant defended appellee's suit by attempting to inject certain criminal defenses such as self-defense and justification; in fact, he argues here that the trial court erred in refusing to give jury instructions containing those defenses. Appellant, however, fails to cite any authority to support his position, and, indeed, we know of none. The authority, instead, runs counter to appellant's argument.

This court on numerous occasions has said that when an AMI instruction is applicable in a case, it shall be used unless the trial judge finds it does not accurately state the law. *Boyd & Smith* v. *Reddick & Twist*, 264 Ark. 671, 573 S.2d 634 (1978); *Vangilder* v. *Faulk*, 244 Ark. 688, 426 S.W.2d 821 (1968). In the instant case, the trial judge correctly read AMI instructions concerning negligence, comparative negligence and those instructions commonly given in connection with these legal theories. He also included appropriate AMI instructions pertaining to damages. Appellant interposed no objection to any of these AMI instructions, but he did attempt to modify AMI 206 and 612 by including language regarding self-defense, justification and assumption of risk.[1]

In *Vangilder, supra* we held that if counsel offers an instruction in lieu of an AMI instruction and the offer is refused, preservation of the record on appeal requires counsel to specify the reasons why the AMI instruction is inadequate or inaccurate. Here, appellant failed to give his reasons for modifications, nor, as already mentioned, does he give us authority or convincing argument why his modified AMI instructions or other instructions should have been read. That being so, we are compelled to hold that the trial judge was correct in his rulings on the instructions both given and denied at trial.

---

[1] We hold that appellant failed to show why the trial court should have given these defenses or modified AMI instructions to include them; but we note our cautionary remarks in *Rogers* v. *Kelly*, 284 Ark. 50, 679 S.W.2d 184 (1984) that AMI 612 (assumption of risk) should be used only in exceptional circumstances, if indeed it is ever proper now that assumption of risk is not a complete defense. AMI 612 has since been deleted from the Arkansas Model Jury Instructions. *See* AMI Civil 2d, 10 (Supp. 1986).

Before departing from the subject of jury instructions, we need mention the court's giving, without objection by either party, AMI 2217, as that instruction read *before* its revision after 1982. That revision added language providing for damages in cases—such as the one at hand—where intentional conduct is involved. In other words, the trial court gave the old AMI 2217 without modification, which reads as follows:

> Punitive damages may be imposed to punish a wrongdoer and to deter others from similar conduct. Before you can impose punitive damages you must find that [appellant] knew or ought to have known, in the light of the surrounding circumstances, that his conduct would naturally or probably result in injury and that he continued such conduct with malice and [or] in reckless disregard of the consequences from which malice may be inferred . . .

In *Ford Motor Credit Co.* v. *Herring*, 267 Ark. 201, 589 S.W.2d 584 (1979), we concluded that the foregoing instruction was formulated for use in negligence cases and not designed—without modification—to apply in a case of an intentional tort. *See also Hess* v. *Treece*, 286 Ark. 434, 693 S.W.2d 792 (1985). In the instant case, both ordinary negligence and intentional tort were alleged and considerable evidence was offered in support of both theories. Neither the appellant nor appellee argue that the prior version of AMI 2217 was given erroneously, thus, such is not an issue in this appeal—at least, not a direct issue. We mention this point, however, because both parties discuss and argue the case as one involving an intentional tort. As previously discussed, appellant raised issues of self-defense and justification. Appellee then countered with evidence in an attempt to show, generally, why appellant shot the appellee, and specifically, to prove, circumstantially, that appellant was trying to protect marijuana patches he had grown near his property line at the time he shot appellee. Obviously, these arguments and defenses have little relevance to the instructions given the jury, allowing it to award punitive damages when appellant's conduct was less than intentional, *viz.*, when his conduct was so reckless as to infer malice.

In the context within which this case was presented to the jury, we now may combine several of appellant's arguments and

dispose of them together.

■ Appellant argues the trial court erred in allowing excessive reference to marijuana throughout the trial, admitting aerial photographs reflecting the location of the marijuana patches in issue, permitting testimony about appellant having grown marijuana more than three years prior to the shooting incident and admitting testimony which tended to show appellant shot some cows that had trespassed onto his property and adjoining and nearby marijuana patches. Obviously, the parties and witnesses referred to marijuana in view of the fact that the appellee and his fellow law enforcement officers were in the process of searching for marijuana when the appellee was shot. Also, in appellant's counsel's opening as well as his closing argument, he denied any connection with marijuana, saying appellant did not use or grow it. Thus, from the commencement of this case, both parties made varied references to marijuana and tried this cause as though it was a marijuana case. Appellant, in his closing argument, referred to the trial as a marijuana case. We can say in summary that we find little merit in appellant's assertion that the court erred in allowing evidence that depicted the location of the marijuana patches involved here, that tended to connect appellant with those patches and that showed he had grown marijuana on earlier occasions, all of which inferentially rebutted appellant's opening remarks to the jury. *See Pursley* v. *Price*, 283 Ark. 33, 670 S.W.2d 448 (1984) (wherein this court said that when a proponent opens the door to a line of questioning, the opposing party may fight fire with fire by introducing rebuttal evidence on that issue).[2]

■ Appellant argues two other points without citing legal

---

[2] Appellant specifically argued that testimony connecting him with shooting cattle trespassing on his property more than three years prior to this shooting incident was too remote and irrelevant to the issues before the court. He also urged that testimony was highly prejudicial. As already noted, appellant denied any prior or present connections with growing marijuana and this testimony showed four cows were shot near a marijuana patch at the edge of appellant's property and that the owner, having heard the shots, immediately responded by finding his dead cows and seeing someone's tracks that led to appellant's cabin. Appellant, while denying killing the cows, conceded he had been tempted to shoot the cattle on several occasions. This testimony, albeit circumstantial, tended to show appellant was implicated with the shooting of cattle which were grazing within view of some nearby marijuana.

authority in support of his arguments, *viz.*, the trial court erred in not allowing appellant to refer to the three prior criminal trials which resulted in mistrials and in allowing value testimony on the marijuana plants found behind his cabin. Thus, we need not reach the merits of those arguments except to note that appellant made repeated references to those trials in spite of the trial court's ruling and that appellant was allowed to fully cross-examine witnesses concerning their testimonies given in those trials. In addition, we recognize appellant does, in a general way, argue the lack of relevancy concerning the value of the marijuana plants found and taken in this case. Nonetheless, appellee offered that testimony, in part, to show the extent of the marijuana involved and that appellant intended to protect against its discovery. Given the parties' limited arguments here and the trial court's discretion in ruling on questions of relevancy, we cannot conclude the trial judge abused his discretion by admitting the value testimony into evidence. *See Olson* v. *Riddle*, 280 Ark. 535, 659 S.W.2d 759 (1983).

Next, we consider appellant's argument that the trial court wrongly denied his motion to set aside or reduce the amount of punitive damages. We find no merit in this point, as well. As we stated in *Pursley* v. *Price, supra*, punitive damages constitute a penalty and must be sufficient not only to deter similar conduct on the part of the same tortfeasor, but they must be sufficient to deter any others who might engage in similar conduct. There, Price obtained damages for his truck in the sum of $367.28, and was awarded $30,000.00 in punitive damages. Pursley had fired several shots at Price's truck after Price failed to respond to Pursley's demands to turn off his vehicle lights which were shining into Pursley's and his wife's eyes when they were sitting in their carport. The evidence and awards given in *Pursley* were not dissimilar to the type of evidence and the amounts in damages given here. Accordingly, we are unable to hold the jury awards of $500.00 compensatory and $20,000.00 punitive damages were in any way disproportionate so as to require them to be set aside or reduced.

We now address appellant's argument that the trial court erred in denying appellant's motion for a prima facie hearing prior to requiring the disclosure of his tax returns. To support his argument, appellant cites *Curtis* v. *Partain, Judge*,

272 Ark. 400, 614 S.W.2d 671 (1981) wherein we held the plaintiffs were required to make a prima facie case showing a cause of action for punitive damages before Curtis could be required to provide personal financial records. We adhere to that holding, but the difference between the *Curtis* case and the situation at bar is that the trial judge here did conduct a hearing after appellant's motion and two weeks prior to trial. At that hearing, the judge ruled appellee had made a prima facie case for punitive damages. In making his ruling, the trial judge found that the appellee had made a prima facie case on the punitive-damages issue, basing his decision upon an affidavit and answers to interrogatories. Appellant does not abstract those documents relied upon by the judge, but suggests that he was prejudiced by the court's failure to have a "full hearing" on the disclosure issue. Appellant also fails to proffer evidence, if indeed any exists, that would show the trial court's ruling may have been otherwise if appellant had been afforded another hearing on the matter. In sum, we cannot say, based upon the record before us, that the judge denied appellant a prima facie hearing on the disclosure issue or that he abused his discretion in admitting appellant's tax returns into evidence.

Finally, we consider appellant's assignment of error that the trial court, without notice to appellant, improperly permitted appellee to take a witness's deposition during the trial. That witness was not called to testify at trial, nor do we find in the record where her deposition was admitted into evidence. In fact, appellant concedes the deposition was not made a part of the record in this appeal. Accordingly, we are unable to address this issue since the record is insufficient for us to consider it.

We conclude that the points raised by appellant fail to show reversible error, and we affirm.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. I believe that this Court is making the same mistake that the trial court made. This is, in effect, the appellant's fourth criminal trial for the manufacture of marijuana, a crime for which he was never charged. Three times the federal government tried to convict the appellant for assaulting a federal officer. Three times a jury failed to convict him of the criminal charge, and this civil suit followed. Moreover, the rules

for the civil trial seem not to have changed from the criminal trial because the defendant was forced a fourth time to defend what amounted to a prosecution for the production of marijuana. Indeed, the majority concedes that this case was tried "as though it was a marijuana case."

Three crops of marijuana from three different patches were paraded in front of the jury during the trial. The majority bases the right to introduce such inflammatory and prejudicial evidence upon the opening statement of appellant's counsel in which he denied the appellant was involved in any manner with marijuana. Citing *Pursley* v. *Price*, 283 Ark. 33, 670 S.W.2d 448 (1984) (note my dissent), the majority concludes that the appellant opened the door to this line of questioning, and thus it was permissible for the appellee "to fight fire with fire" by introducing rebuttal evidence on this issue. I had previously thought that the trial court always instructed the jury that the arguments of counsel are not evidence to be considered by them. Common sense tells me, however, that it was impossible for the jury to reach a verdict without basing it upon the allegation that appellant was a marijuana grower.

Moreover, the trial court allowed testimony concerning the market price for a full crop of marijuana to be admitted into evidence. There was no hard evidence that the appellant was responsible for the growing of the marijuana. The street value, as estimated by the officers, could do nothing but add prejudice to the appellant's defense.

The appellee, the federal officer, was allowed to prove that several cows were found shot to death near the appellant's property three years earlier. So far as I am concerned, dead cows have no relevance whatsoever to the case being tried. There is no testimony that the appellant shot the cows. The carcasses of the cows would have inevitably led to the discovery of the marijuana. Such evidence was neither relevant nor probative of the issue in question.

Perhaps the greatest mistake is the majority's approval of the trial court's requirement that the appellant introduce his income tax returns. These returns were apparently used for the purpose of showing that the appellant must have had income from growing marijuana. A person that's smart enough to grow

marijuana is not dumb enough to put it in his income tax forms. So far as I know we have never permitted individual income tax returns to be admitted as evidence in a civil case. Certainly it would have been proper to show what appellant's net worth was by introduction of evidence of the amount of money reported on his income tax return. However, I am certain this Court will rue the day that they approved this procedure.

I would reverse the case and remand for a fair trial on the merits of the complaint.